IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MICHAEL CHARLES CHADMAN, §
        Petitioner, §
             §
v. § Civil Action No. 4:20-CV-1131-O
             §
BOBBY LUMPKIN, Director, §
Texas Department of Criminal Justice, §
Correctional Institutions Division, §
        Respondent. §

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Michael Charles Chadman, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Bobby Lumpkin, director of that division, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. BACKGROUND**

In July 2017 in Parker County, Texas, Case Nos. CR17-0425 and CR17-0427, Petitioner was charged by separate indictment with one count of tampering with evidence and one count of possession of a controlled substance. SHR02[1] 7, ECF No. 15-37; SHR03 7, ECF No. 15-40. Both indictments also alleged that Petitioner had been previously convicted of sequential felony convictions for DWI and possession of a controlled substance. *Id.* A jury found Petitioner guilty of both offenses, Petitioner pleaded true to the enhancement allegations in the indictments, and the jury assessed his punishment at 25 years' confinement in the tampering case and two years' confinement

---

[1] "SHR02" and "SHR03" refer to the record in Petitioner's state habeas proceedings in WR-79,391-02 and WR-79,391-03, respectively.

in the possession case. SHR02 8, ECF No. 15-37; SHR03 8, ECF No. 15-40. Petitioner's convictions were affirmed on appeal and the Texas Court of Criminal Appeals refused his petitions for discretionary review. Electronic R., ECF No. 15-1. Petitioner also sought postconviction state habeas-corpus relief by filing two state habeas applications, one for each conviction. SHR02 11–26, ECF No. 15-37; SHR03 10–27, ECF No. 15-40. The application challenging his conviction for possession of a controlled substance was dismissed without written order because his sentence had been discharged. Action Taken, ECF No. 15-35. The application challenging his conviction for tampering was denied by the Texas Court of Criminal Appeals without written order. Action Taken, ECF No. 15-38. In this habeas petition, Petitioner challenges only his conviction for tampering.

Petitioner's appellate counsel summarized the evidence at trial as follows (all spelling, grammatical, and/or punctuation errors are in the original):

> The State's first witness was Officer Tiffany van Zandt of the Weatherford Police Department who testified that she was on routine patrol on the evening of January 1st, 2017 at about 11.10 p.m. when she ran a license plate check on a vehicle and it came back as having unconfirmed insurance and an expired motor vehicle registration. She activated her overhead emergency lights, and initiated contact with the driver, who verbally identified herself as Aria Adams, and [Petitioner] who initially verbally identified himself as Michael Johnson. At some point, she requested permission to search [Petitioner] for any type of contraband, and then she searched his pockets and found a wallet with two identifications in it which showed that his real name was Michael Chadman. After providing dispatch with his real name and information, Officer van Zandt learned that [Petitioner] had a warrant out for his arrest and so she placed him under arrest and had him sit on the curb with the backup officer who had arrived to assist her.
>
> After the arrest, Officer van Zandt placed [Petitioner] in the back seat of her patrol car, and while in the seat according to her testimony and as shown in State's Exhibit 1 and 2 [dash cam videos], he placed a baggie containing what was presumptively methamphetamine, (the officer used a field testing kit), into the seat belt receiver. Back at the Parker County Jail, the back-up officer McClure took apart the receiver end of the buckle and retrieved a small red plastic baggie, which [Petitioner] acknowledged as belonging to him. [Petitioner] also had a set of keys and

a long thin skeleton key in his possession that she surmised he had used to push the bag down into the receiver. She testified that the belt buckle is still defective because of the damage done to it that night by [Petitioner].

She also recovered other items from [Petitioner], one of which was a meth pipe which was located in his coffee cup. Officer van Zandt placed the recovered baggie inside another empty bag, and too it to the Weatherford Police Department property room where it was sent to the State laboratory for testing.

Tina Maxwell testified that she is employed by the Weatherford Police Department as an evidence technician, and she described the procedures in place to handle evidence obtained by law enforcement as well as the chain of custody regarding the items seized from [Petitioner] during his arrest. The evidence, (State's Exhibit 7 [described as "red baggie containing drug"], was sent on January 6th, 2017 to the Texas Department of Public Safety Laboratory in Abilene, Texas for analysis and returned on July 21st, 2017. Commander Patrick Mahoney of the Weatherford Police Department testified that he physically transported the evidence received by Tina Maxwell to the United States Post Office and sent it to the laboratory via certified mail.

Jacklyn Lochridge testified that she is a forensic scientist in the controlled substances section at the Department of Public Safety Crime Laboratory in Abilene and that she received State's Exhibit 7 on January 9th, 2017 and placed in a secure vault until testing could be completed. She began the analysis on May 26th, 2017 by weighing the evidence and completed the testing procedures on June 1st, 2018. State's Exhibit 7 was determined to be 0.04 grams of methamphetamine including any dilutants or adulterants.

[Petitioner] testified in his own behalf. He acknowledged prior criminal convictions going back to 1981 in Pennsylvania for receiving stolen property, for burglary in 1982, DWI in 2004, DWI and paraphernalia and Driving with a Suspended License, DWI and then a Felony DWI in Texas in 2010, and a Possession of Cocaine charge for which he received an 8-year sentence. He testified that he had told Officer van Zandt that he had a $5 baggie in his pocket when he got out of the police car and he also admitted that he was trying to hide the evidence. He told the jury that he had been illegally detained because the State had failed to indict him within 180 days of his arrest.

On cross-examination he conceded that he had an extensive criminal history. He again conceded that he had the methamphetamine in his pocket describing it as "less than a pinch of salt". He also admitted that he knew that he had a blue warrant out for failing to report to his parole officer on December 21st, 2016 ad that his possession of methamphetamine would also be a violation of his parole. He also

admitted to using methamphetamines earlier on the day of his arrest. He agreed with the prosecutor that it was his intention to get rid of the contraband in the back seat of the cop car because he did not want to go back to jail for it and that he had used part of the seatbelt to push the drugs into the receiver.

App. Supp. Br. 11–14, ECF No. 15-13 (footnotes and record citations omitted).

## II. ISSUES

Petitioner raises the following grounds for relief:

(1) He was denied a speedy trial;

(2) He received ineffective assistance of trial counsel;

(3) There is no evidence that he committed the offense; and

(4) He was never Mirandized before being interrogated and confessing to having an empty baggie.

Pet. 6–7, ECF No. 1.

## III. RULE 5 STATEMENT

Respondent does not believe that the petition is barred by the statute of limitations, subject to the successive-petition bar, or that the claims are unexhausted and procedurally barred. Resp't's Answer 6, ECF No. 16.

## IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This

standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter,* 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke,* 356 F. 3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). Absent express findings, a federal court may imply fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002). It is the petitioner's burden to rebut the presumption of correctness through clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Furthermore, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191-92 (2018). If there is no related state-court decision providing the court's reasoning, a federal court assumes that the state court applied the proper clearly established federal law to the facts of the case and then determines whether its decision was contrary to or an objectively unreasonable application of that law. *See* 28 U.S.C.A.

5

§ 2254(d)(1); *Virgil v. Dretke,* 446 F.3d 598, 604 (5th Cir. 2006).

Petitioner raised his claims in his state habeas application, but the state habeas court found "no disputed issues of fact" and the Texas Court of Criminal Appeals denied relief without written order. Thus, to the extent more particularized findings and legal conclusions were not made as to those claims, this Court will infer fact findings consistent with the courts' disposition and, absent any evidence that incorrect standards were applied, assume that the state courts applied correct standards of federal law as determined by the Supreme Court in making the decision.

## V. DISCUSSION

### A. Speedy Trial

Under his first ground, Petitioner claims that he was "denied due process speedy trial." As supporting facts, he states (all spelling, grammatical, and/or punctuation errors are in the original):

> I was arrested on 1/1/17. I requested speedy trial 1/24/17. I was not indicted in 180 days. I was scheduled for trial 11/13/17. I wrote a letter to the court, again requesting speedy trial, trial date moved up to 9/25/17. D.A. delayed trial until 1/16/18 for her own purpose, through no fault of my own.

Pet. 6, ECF No. 1. *See also* Pet'r's Mem. 3–4, ECF No. 4.

To the extent Petitioner asserts a speedy-trial claim under Texas law, the claim is not cognizable on federal habeas review and his Sixth Amendment clam is meritless. The right to a speedy trial is guaranteed by the Sixth Amendment and applies to state criminal proceedings through the Fourteenth Amendment. U.S. CONST. amends. VI, XIV; *Klopfer v. North Carolina,* 386 U.S. 213, 223-26 (1973). In *Barker v. Wingo,* the Supreme Court prescribed several factors to be considered when evaluating a speedy-trial claim: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant. 407

6

U.S. 514, 530 (1972). None of these factors is either necessary or sufficient to find a speedy-trial violation; "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533. The speedy-trial inquiry therefore involves a "difficult and sensitive" balancing of these factors under the particular circumstances of each case. *Id.* at 530.

Deferring to the state habeas courts' implied factual findings on the issue and assuming the state court engaged in a *Barker* analysis, Petitioner fails to establish that the state courts' denial of relief is objectively unreasonable. As the Supreme Court has observed, courts generally view a delay of approximately one year as sufficient to require a full *Barker* analysis, and this is the rule in the Fifth Circuit. *Goodrum v. Quarterman,* 547 F.3d 249, 257 (5th Cir. 2008). The period of delay starts when a person is accused of a crime—*i.e.,* when he is arrested—and ends when the trial begins. *Dillingham v. United States*, 423 U.S. 64, 64–54 (1975); *United States v. Marion,* 404 U.S. 307, 320–21 (1971). The record reflects that Petitioner was arrested on January 1, 2017, and that counsel was appointed for him on January 24, 2017. SHR03 7, ECF No. 15-40. Petitioner was indicted on July 13, 2017, and his jury trial commenced on January 16, 2018. *Id.* at 153. Therefore, the first *Barker* factor, the length of delay, weighs slightly in Petitioner's favor. Because a year and 15 days passed between Petitioner's arrest and his trial, a full *Barker* analysis is triggered.

The second factor, the reason for the delay, does not weigh in Petitioner's favor. Petitioner asserts that the prosecutor delayed his trial until January 16, 2018, so she could review 549 pages of his prison records provided to her by TDCJ on September 13, 2017, and thus "build a better case" against him. Pet'r's Mem. 3–4, ECF No. 4. However, there is no evidence that the state made a "deliberate attempt to delay the trial in order to hamper the defense." *Barker,* 407 U.S. at 531. And, as noted by Respondent:

7

> On September 5, 2017, [Petitioner]'s trial was set for September 25, 2017. Less than one week later, on September 12, 2017, [Petitioner] filed a letter requesting new trial counsel, which the trial court granted the following day. [Petitioner]'s trial was then reset for trial on October 23, 2017. Despite the new appointment, [Petitioner] continued to unsuccessfully request new counsel three additional times before trial. On October 19, 2017, trial counsel James Wilson requested a competency evaluation of [Petitioner]; the trial court granted the request and the invoice reflects it was conducted on November 10, 2017. Wilson also filed on October 19, 2017, a motion for the appointment of an investigator. Lastly, on December 18, 2017, the trial court granted defense counsel's request for a retesting of the controlled substance. Thus, beginning with the September 5 trial call, it appears that the delay was largely attributable to [Petitioner]'s request for new counsel, competency evaluation, and further investigation including the retesting of the methamphetamine.

Resp't's Resp. 10, ECF No. 10 (record citations omitted).

As to the third factor, assertion of the right, Petitioner claims that he requested a speedy trial from his original court-appointed attorney on January 24, 2017, however the record indicates that the matter was first brought to the attention of the trial judge in a pro se letter on August 17, 2017. Pet'r's Mem. 3, ECF No. 4; Clerk's R. 43–44, ECF No. 15-3. And, much of the delay after that point was due to Petitioner's actions. Thus, the third factor does not weigh in Petitioner's favor.

Nor does the final factor weight in Petitioner's favor. Although Petitioner allegedly suffered stress and depression as a result of his pretrial detention, nothing indicates that his defense was prejudiced in any significant way from the delay. Pet'r's Mem. 4, ECF No. 4.

**B. Ineffective Assistance of Counsel**

Under his second ground, Petitioner claims that he was denied effective assistance of trial counsel James Wilson, his second court-appointed attorney, due to a conflict of interest. Pet. 6, ECF. No. 1. Specifically, he claims that a conflict between counsel and himself arose because counsel refused to file motions on his behalf, to withdraw from his case, and to investigate and have the court-appointed investigator question his witnesses; failed to file a motion to hear his motion to

8

suppress and to object to the "illegal video and involuntary statements in trial"; and filed a motion "trying to get [him] found incompetent" without his knowledge. *Id.*; Pet'r's Mem. 4–5, ECF No. 4.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial or appellate strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance-of-counsel claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Deferring to the state habeas courts' implied factual findings on the issue and assuming the state courts engaged in a *Strickland* analysis, the state courts' rejection of Petitioner's ineffective-assistance claims is not objectively unreasonable. Whether to file pretrial motions is within the realm of trial strategy, and such decisions are "virtually unchallengeable" on postconviction habeas review. *See Strickland,* 466 U.S. at 689; *Murray v. Maggio,* 736 F.2d 279, 283 (5th Cir. 1984). Additionally, as noted by the state:

> Before Mr. Wilson was appointed on September 13, 2017, [Petitioner's prior court-appointed counsel] Mr. Calzada had previously filed applications for writ of habeas corpus, a motion for a personal bond, a motion for discovery, a request for notice under TEX. R. EVID. 404(b), a motion to suppress, a request for disclosure of experts, and a motion to quash. Mr. Wilson thereafter filed a motion for a competency examination, a motion for the appointment of an investigator, a motion to invoke "the rule" at trial, and two motions in limine and he obtained an order to examine and retest the evidence.

SHR03 155, ECF No. 15-40 (record citations omitted). Petitioner failed to demonstrate that had counsel moved to hear pending motions, filed additional motions, or made additional objections at trial they would have been successful. Counsel is not required to file frivolous motions or make frivolous objections. *See Green v. Johnson,* 160 F.3d 1029, 1037, 1042 (5th Cir. 1998). Further, counsel was undoubtedly aware that Petitioner was not entitled to another court-appointed attorney just because of a conflict of personality or disagreements concerning trial strategy between him and Petitioner. *See, e.g., United States v. Gonzalez-Lopez,* 548 U.S. 140, 151 (2006) (providing the Sixth Amendment provides criminal defendants with a right to counsel, but the "right to counsel of choice does not extend to defendants who require counsel be appointed to them"); *King v. State,* 29 S.W.3d 556, 566 (Tex. Crim. App. 2000) (providing "personality conflicts and disagreements concerning trial strategy are typically not valid grounds for withdrawal").

Petitioner's claim that counsel failed to investigate and have the investigator question witnesses is conclusory. Counsel obtained a court-appointed investigator, and Petitioner neither alleged any additional facts that could have been uncovered with additional investigation nor did he present affidavits or other evidence from uncalled witnesses, namely Adria Adams, who were available and would in fact have testified at trial in a manner beneficial to the defense. *See United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (providing ineffective assistance claims based upon uncalled witnesses are disfavored and conclusory if unsupported by affidavits indicating the witnesses' willingness and availability to testify and the substance of the proposed testimony). Conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue. *See Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998). And, it was counsel's duty to consider whether Petitioner was mentally competent to stand trial and to seek a competency evaluation if his interaction with Petitioner led him believe Petitioner's competency was questionable. *See Gray v. Ellis,* 257 F.2d 159, 161 (5th Cir. 1958).

Finally, even if Petitioner had established ineffective assistance of counsel in one or more of these respects, given his testimony admitting to committing the offense and his lengthy criminal history, he could not demonstrate that but for counsel's representation he would have been acquitted or that his sentence would have been significantly less harsh.

### C. Insufficient Evidence

Under his third ground, Petitioner asserts that he placed the "empty" baggie in the seat belt

11

*knowing* that police video would show that "effort to disclaim my connection to it"; thus, there was no evidence of tampering. According to Petitioner (all spelling, grammatical, and/or punctuation errors are in the original),

> [w]hen Adria Adams and I were pulled over, and arrested on warrant, I was placed in police car with Officer Van Zant knowing that I had a baggie on me. Adria told Officer Van Zant that I had it on me before I was placed in police car. Officer Van Zant purposely did not search my front pocket of my pants, which contained baggie and a key ring containing six keys. After placing me in police car, I immeadiatly dispossessed myself of that baggie, and Officer Van Zant saw it in the seat belt. I was charged with tamper/evidence while an investigation was being conducted, (searching my car), even though Officer Van Zant was aware of baggie when she placed me into the police car, without searching me and removing baggie from me. My witness, Adria Adams, was witness to all this, but my lawyer Mr Wilson would not let his investigator Mr. Babcock even question Adria about this, even though she was available in Parker Co Jail. Because Adria had told Officer Van Zant that it was an empty baggie, Officer Van Zant allowed me to dispossess myself of it in her police car, knowing that she would charge me with tamper/evidence, a third degree felony that could be enhanced to habitual, and therefore get a 25 year conviction instead of just a state jail felony for possession of dirty baggie.

Pet'r's Mem. 7–8, ECF No. 4.

Citing only to state law, Petitioner's appellate counsel addressed the sufficiency of the evidence in his *Anders* brief on appeal as follows (all spelling, grammatical, and/or punctuation errors are in the original):

> The indictment charged [Petitioner] with the felony offense of Tampering with Evidence, alleging that he *inter alia:*
>
> "did then and there, knowing that an investigation was in progress, to-wit: a traffic stop, intentionally and knowingly conceal a controlled substance, to-wit: Methamphetamine, with intent to impair its availability as evidence in the investigation."
>
> The indictment therefore closely tracked the language of the statute:
>
> (a) A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he:

        (1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding; . . . .

The possession charge is not subject to a sufficiency analysis because [Petitioner] conceded that he owned and possessed the methamphetamine:

    Q.      And you know that you had that baggie of methamphetamine, right?
    A.      Yes, ma'am.
    Q.      And it was on your possession, right?
    A.      I had it in my pocket, yes, ma'am.

[Petitioner]'s counsel therefore examines two aspects of the tampering conviction, the first being that [Petitioner]'s actions were arguably only an attempt to conceal the evidence thus reducing it to a state jail felony offense, and the second being his claim that he was trying to hide the evidence at the behest of the officer.

### Standard of Review.

"In inquiring whether a conviction is supported by sufficient evidence, our task is to "determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." The relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Under our case law, "[v]iewing the evidence 'in the light most favorable to the verdict' . . . means that the reviewing court is required to defer to the jury's credibility and weight determinations[.]" We should take care, in other words, not to act as a "thirteenth juror" by overturning a jury's duly-delivered verdict simply because we "'disagree' with [that] verdict." *Thornton v. State,* 425 S.W.3d 289, 303 (Tex. Crim. App. 2014).

The *Thornton* case provides a blueprint for cases involving tampering with evidence in that it thoroughly delved into issues of intent, sufficiency, lesser included offenses, reformation of the judgment, and strategic elements of the jury charge. In the case at bar, the most relevant aspect of [Petitioner]'s conduct after he was placed in the patrol vehicle was his belabored and intentional concealment of the evidence in the seat belt receiver, caught on video and conceded to later on the witness stand. Had he merely left the methamphetamine on the car seat or the floorboard, no additional charges besides the possession charge would have arisen. The issue that therefore arises is if [Petitioner]'s acts in placing the contraband in the seat belt was merely an unsuccessful attempt to tamper with the evidence.

As stated in the *Thornton* opinion, this may simply be an instance in which

the defendant was trying to distance himself from incriminating evidence on his person, for the sole purpose of avoiding criminal prosecution:

"Similarly, in cases of tampering with evidence, not every act of discarding an object evinces an intent to impair the availability of that object as evidence in a later investigation or proceeding. There may be cases in which the most inculpating inference the evidence would support is that the accused simply intended to dispossess himself of the object in order to more plausibly disclaim any connection to it. And while it is true that "it is within the province of the factfinder to choose which inference is most reasonable," it is also true that any inference made by the jury must be supported by sufficient evidence." *Thornton v. State,* 425 S.W.3d 289, (2014).

The courts in Texas therefore defer to juries to decide the most reasonable explanation for the conduct proven, if supported by sufficient evidence. Section 15.01 of the Texas Penal Code states that "[i]t is no defense to prosecution for criminal attempt that the offense attempted was actually committed." Here, [Petitioner] ultimately failed to conceal the evidence, which begs the philosophical question of how a successful attempt to conceal evidence can be prosecuted if it is never discovered. That aside, the legal component of the offense does not require success. This was an issue of a failure to ultimately conceal or tamper with the evidence. The actual tampering took place at the moment it was occurring, and the fact that it was unsuccessful or doomed to be discovered does not dissolve the completed act.

[Petitioner]'s counsel next examines if [Petitioner]'s attempt to blame the officer for his concealment of the contraband is in any sense corroborated by the evidence. If plausible, this would indeed be a novel and possibly legitimate defense – that [Petitioner] was trying to conceal the evidence so as not to bring the contraband into a secure facility, a violation of Texas Penal Code §38.11 which is a third-degree felony. Committing one felony to avoid another felony could be a valid defense if it was at the direction of a law enforcement officer or if it somehow prevented the use of deadly force or if it involved duress.

[Petitioner] at trial appeared to agree that he had tried to hide the evidence:

Q.   (By [Defense counsel]) Were you trying to -- were you trying to hide that cocaine [sic]?
A.   Yes, sir, I was trying to hide it. It wasn't cocaine -- no, sir. And it's not defined as . . . .

There was no mention on direct examination that the officer had instructed him to hide the evidence. This only appeared on cross-examination when he admitted that he had the methamphetamine but was trying to hide it at the direction of the

officer:

> Q. (By [the prosecutor]) All right. So we know that Ms. Van Zandt or Officer Van Zandt was conducting the traffic stop. And we know that you had the methamphetamine in the back seat of the cop car, correct?
> A. Yes, ma'am.
> Q. And your intention in the back seat of that cop car was to get rid of the methamphetamine because you didn't want to go back to jail for it, right?
> A. Yes, ma'am.

He then explained that he had not used his keys to stuff the baggie into the receiver, but rather the metal insert of the seat belt itself:

> Q. What were you squirming for in the back seat for 25 straight minutes?
> A. I was trying to get my hand -- handcuffs. I did put it in the receiver, but I didn't use my keys.
> Q. Oh, okay.
> A. I used the other part of the -- of the seat belt to push it in.
> Q. Okay. So you were able to push it in all the way. Why did you do that?
> A. Because I didn't want to go -- <u>she told me if I get caught with it at the police station, it would be double trouble, it would be a higher offense</u>.
> Q. And so you didn't want that piece of evidence to be used against you. You were trying to hide it, right?
> A. Well, she knew I had it. That's what had me all fired up because I told her I had it when I got out of the car. And she let me in the police car with it.

However, on State's Exhibit 1 [the dash cam video], [Petitioner] disavowed <u>any</u> knowledge of any contraband in the seat belt receptacle even as the officer was struggling to put the buckle into the receiver. When the officer discovers the contraband, [Petitioner] is clearly heard on tape saying that "there ain't none of my meth anywhere near here baby". At no point on the tape can she be heard to tell him to hide or conceal the evidence so as not to bring into the jail. Ultimately, it is very clear that [Petitioner] was laboring for at least 15 minutes on camera to insert the contraband into the seat belt buckle, and it is also clear that he was unaware that there was an in-car camera videotaping the entire proceeding.

It defies logic that [Petitioner] would have told the officer that he had the contraband on him before he was placed in the patrol vehicle, and then immediately denied it in the patrol vehicle after she couldn't insert the seat belt. It would appear that this line of defense may have occurred to [Petitioner] during cross-examination since there was no such defense offered during direct examination. [Petitioner]'s counsel therefore concludes that the jury's decision to discount [Petitioner]'s testimony is supported by the evidence and the facts.

15

App. Supp. Br. 25–30, ECF No. 15-13 (emphasis in original) (footnotes and record citations omitted). Thus, the state courts considered the sufficiency of the evidence issue on direct appeal, albeit in an *Anders* context, and ruled against Petitioner.

Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia,* 443 U.S. 307 (1979). In *Jackson,* the Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. It is within the sole province of the jury to judge the credibility of witnesses, evaluate witnesses' demeanor, resolve conflicts in testimony, and weigh evidence in drawing inferences from the facts. *United States v. Millsaps,* 157 F.3d 989, 994 (5th Cir. 1998). Courts do not second-guess the weight or credibility given the evidence. *United States v. Ramos-Garcia,* 184 F.3d 463, 465 (5th Cir. 1999). Moreover, where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *Callins v. Collins,* 998 F.2d 269, 276 (5th Cir. 1993).

State law on the issue comports with *Jackson* and, applying the appropriate deference, the state courts' rejection of Petitioner's sufficiency-of-the-evidence claim is not objectively unreasonable in light of the evidence adduced at trial. It was the jury's role to determine Petitioner's credibility and to draw reasonable inferences from the evidence. Assuming the jury found Petitioner's testimony that Officer Van Zant knew he had the baggie of methamphetamine in his pocket before he got into the police car incredible, viewing the evidence in the light most favorable to the jury's verdict, the jury could have reasonably determined that Petitioner, knowing an

investigation was in progress, intended to conceal the baggie in the seat belt so that the officer would not find it and use in the investigation, and not merely to dispossess himself of it, beyond a reasonable doubt.

**D. *Miranda* Warnings**

Lastly, under his fourth ground, Petitioner claims that he was never given his *Miranda* warnings although he was "subjected to custodial interrogation in back of [the] police car until [he] admitted to having [the] empty baggie." Pet. 7, ECF No. 1. Trial counsel did not object at trial to admission of the statement. Reporter's R., vol. 3, 35, ECF No. 15-8. Texas courts have not reached the merits of *Miranda* claims because of the failure to comply with the contemporaneous-objection rule. *See, e.g., Moulden v. State,* 576 S.W.2d 817, 820 (Tex. Crim. App. 1978); *Shumake v. State,* 502 S.W.2d 758, 761 (Tex. Crim. App. 1973); *Larocca v. State,* 479 S.W.2d 669 (Tex. Crim. App. 1972); *Clark v. State,* 470 S.W.2d 869, 670 (Tex. Crim. App. 1971). Accordingly, the Court concludes that the state courts were aware of the procedural default.

A procedural default premised upon a petitioner's failure to comply with the Texas contemporaneous-objection rule is an adequate and independent state procedural barrier to federal habeas review. *See Scheanette v. Quarterman,* 482 F.3d 815, 823–24 (5th Cir. 2007); *Dowthitt v. Johnson,* 230 F.3d 733, 752 (5th Cir. 2000). *See also Wainwright v. Sykes,* 433 U.S. 72, 86–87 (1977) (applying Florida's contemporaneous-objection rule to *Miranda* claim). Therefore, absent a showing of cause and prejudice, such showing not having been demonstrated by Petitioner, this claim is procedurally barred from the Court's review. *See Sawyer v. Whitley,* 505 U.S. 333, 339–40 (1992).

The Court notes that even if the claim were not procedurally barred, *Miranda v. Arizona,* 384

U.S. 436 (1966), holds that "the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during 'custodial interrogation' without a prior warning. Custodial interrogation means 'questioning initiated by law enforcement officers after a person has been taken into custody.'" *Illinois v. Perkins,* 496 U.S. 292, 296 (1990) (quoting *Miranda*, 384 U.S. at 444). There is no evidence in this case indicating if and when Petitioner was Mirandized or of any interrogation following his arrest.

## VI. CONCLUSION

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. Further, for the reasons discussed, a certificate of appealability is **DENIED**.

**SO ORDERED** on this 12th day of May, 2021.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**